[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14483
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00236-TJC-MCR-5

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

versus

THOMAS WIMBERLY,
LISA WIMBERLY,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(February 26, 2013)

Before PRYOR, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Thomas Wimberly appeals his sentence of one year and one day, and his

sister, Lisa Wimberly, appeals her sentence of 33 months of imprisonment, for

conspiring to commit wire fraud.  18 U.S.C. § 1349.  The Wimberlys argue that they should not be held accountable for losses caused by their coconspirators in which they were not directly involved and that their sentences are unreasonable. Thomas also argues that he was entitled to a reduction of his offense level for his minimal role in the conspiracy.  We affirm.

The district court did not err in determining the amount of loss attributable to the Wimberlys.  A defendant is responsible for loss that "the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."  United States Sentencing Guidelines Manual § 2B1.1 cmt. n.3(A)(iv) (Nov. 2011).  The Wimberlys participated in a conspiracy to negotiate altered personal checks, and the district court did not clearly err in finding that the Wimberlys were responsible for the losses attributable to checks bearing the names of and negotiated by their coconspirators.  The Wimberlys admitted, by "fail[ing] to object to [the] allegations of fact in [their presentence reports]," United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006), that the coconspirators shared information about how to obtain personal checks that they altered by erasing the magnetic ink character recognition line; decided to negotiate the checks in stores using a verification system provided by Certegy Check Services, Inc., that was unable to detect the alteration; and often traveled together to negotiate the checks. The Wimberlys individually negotiated hundreds of fraudulent checks, and they

2

knew in part, and reasonably could have foreseen, the extent to which their coconspirators would act likewise. See United States v. McCrimmon, 362 F.3d 725, 731 (11th Cir. 2004); see also U.S.S.G. § 1B1.3 cmt. n.2. The Wimberlys accompanied their coconspirators to negotiate fraudulent checks, which Lisa did even after being released on bond, and Thomas admitted to federal agents that he benefitted financially "from the execution of the scheme, while knowing [its] nature and purpose."

Thomas argues, for the first time, that the government failed to prove that the conspiracy caused a loss of $231,640.90, but Agent Stephen Albano testified about determining the loss using spreadsheets prepared by Certegy that listed the checks negotiated by the conspirators at different stores. And Thomas does not challenge the reliability of Albano's testimony or the reliance of the district court on that testimony. See United States v. Maxwell, 579 F.3d 1282, 1305 (11th Cir. 2009).

Thomas also, for the first time, argues that the district court failed to make specific findings about his participation in the conspiracy, but we disagree. The district court was entitled to reject Thomas's arguments that he was less culpable than his coconspirators and to base its decision on the undisputed information in Thomas's presentence report. See United States v. Bradley, 644 F.3d 1213, 1293 (11th Cir. 2011).

3

The district court did not clearly err by denying Thomas a minimal role reduction. A defendant is entitled to a four-point reduction of his offense level only if he is "plainly among the least culpable of those involved in the conduct of the group," as evidenced by a "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2(a) & cmt. n.4. Thomas knowingly participated in a conspiracy to negotiate fraudulent checks, negotiated more than 100 checks individually, aided his coconspirators, and profited from their misdeeds. As found by the district court, even if Thomas were "less involved than some others," he failed to introduce any evidence that his conduct was the least significant in the conspiracy.

The district court did not abuse its discretion in sentencing the Wimberlys. Over the course of a year, the Wimberlys and three coconspirators negotiated more than 1,000 fraudulent checks at various stores in two states that resulted in a loss exceeding $200,000. With respect to Thomas, the district court reasonably decided to vary 15 months below the advisory sentencing range of 27 to 33 months on the grounds that Thomas was "substantively less involved than some of the big players" but involved "not just in a miniscule basis" and that he had 36 prior convictions for crimes ranging from burglary and grand theft to the possession and sale of drugs. See 18 U.S.C. § 3553(a). Thomas's sentence of 12 months and one day was within the sentencing range that he requested, and was far less than the

4

maximum statutory term of 20 years of imprisonment.  See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005).  With respect to Lisa, the district court imposed a sentence within her advisory guideline range of 30 to 37 months of imprisonment, which we ordinarily expect to be reasonable.  See United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  The district court rejected Lisa's arguments for leniency based on motherhood and her religious background and reasonably determined that a sentence of 33 months of imprisonment would best address her role as an "active member, if not the most active member" in the "fairly brazen and fairly organized" conspiracy, her recidivism and disregard for the terms of her release on bond, and her criminal record.  See 18 U.S.C. § 3553(a).  Lisa argues that the district court erroneously "imputed a criminal history to her based on her mere arrests alone," but the district court was entitled to consider Lisa's 20 arrests for offenses involving fraud as well her nine convictions in Florida courts for offenses that included petit theft and presenting worthless checks.  Id. § 3553(a)(1).  The Wimberlys' sentences are reasonable.

We **AFFIRM** the Wimberlys' sentences.